UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MODULAR BUILDING SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO. 1:05-CV-141 AS |
| THE FALL CREEK HOME LLC, | ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On September 27, 2006, Plaintiff Modular Buildings Solutions LLC (MBS)  filed a motion for summary judgment.  On December 21, 2006, this Court denied MBS's motion for summary judgment, and this case was also fully referred to the undersigned.  On April 20, 2007, this Court vacated its denial of summary judgment and ordered the parties to re-brief the motion.  On September 14, 2007, Defendant The Fall Creek Home LLC (Fall Creek) filed a motion for summary judgment.  This Court now enters its report and recommendation on all pending matters.

**I.    PROCEDURE**

On April 28, 2005, MBS filed its complaint alleging that Defendant The Fall Creek Home LLC (Fall Creek) had breached a contract between the two parties. On September 27, 2006, MBS filed a motion for summary judgment.  On November 14, 2007, Fall Creek filed a response in opposition to MBS's motion.  On November 27, 2006, MBS filed a reply in support of its motion**.**

On December 19, 2006, this Court held a hearing on the motion for summary judgment.  Subsequently, on December 21, 2006, this Court entered an order denying MBS's motion for

summary judgment. On that same day, this case was fully referred to the undersigned for all pending and future dispositive motions.

On April 20, 2007, this Court held a pretrial conference. On that day, this Court vacated its previous entry on MBS's motion for summary judgment. It also ordered the parties to file supplemental briefing on the original motion for summary judgment. On July 9, 2007, this Court entered an order that merely restated, clarified, and memorialized what occurred at the April 20, 2007, conference.

The parties completed supplemental briefing on June 26, 2007. On September 5, 2007, this Court held a hearing on the pending motion for summary judgment. At the conclusion of the hearing, this Court gave Fall Creek leave to file a motion for summary judgment. On September 14, 2007, Fall Creek filed its motion for summary judgment, and on September 25, 2007, MBS filed its opposition to that motion. All matters are now fully ripe for this Court's review. This Court may issue a report and recommendation on these motions pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**II.    ANALYSIS**

   A.    Facts

Fall Creek manufactures and sells modular home components, which are used to assemble modular homes (Doc. No. 36-3, Aff. Of Alex Lucido). MBS is a limited liability company that deals with the brokerage of modular homes (Id.). On November 25, 2003, Fall Creek and MBS entered into a distribution agreement (Doc. No. 36-4, Distribution Agreement). The agreement indicates that MBS would sell and distribute Fall Creek products in Michigan, Ohio, and Indiana (Id.). Under paragraph four of the contract, Fall Creek agreed to refer land

development and core city projects to MBS (Id.).  But under paragraph three, Fall Creek had the right to continue selling within its existing dealer network, and MBS agreed not to sell in areas where Fall Creek already had business (Id.).

Fall Creek maintains dealer bodies, developers, builders and others as its existing dealer network (Doc. No. 61-4 at 2, Dep. Of James DeFreese).  Sylvia Hertzog Ludington (Ludington) was one individual who had sold modular homes for Fall Creek in the past (Doc. No. 61-2 at 4, Dep. of Ludington).  Ludington has sold homes a number of times for Fall Creek prior to December 15, 2004 (DeFreese Dep. at 3).  In fact, Ludington sold homes for Fall Creek beginning in 1999 (Doc. No. 61-5, Aff. Of Ludington).  First, she was a sales representative for Birchwood Homes, which was one of Fall Creek's dealers, and then, she worked individually with Fall Creek from 1999 to 2003 (Id.).

At some point around or before December 15, 2004, Ludington purchased modular homes from Fall Creek and sold them to Candler-Stevens, which built the North Pointe Village development in Highland Park, Michigan (Doc. No. 55-6 at 4-5, Ludington Dep.).  Fall Creek did not refer the project to MBS.  On December 15, 2004, Ludington signed a written dealer application with Fall Creek (Doc. No. 55-5).  The name of the dealership was listed as Highland Homes (Id.).  On November 10, 2005, Fall Creek terminated its distribution agreement with MBS (Doc. No. 55-4).

MBS argues that Fall Creek breached the distribution agreement between the two parties. The issues this Court must resolve are whether or not the distribution agreement between the parties is ambiguous, and if not, whether Fall Creek breached that agreement.

B.     Standard of Review

3

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

    C.    MBS's Motion for Summary Judgment

The parties do not dispute, and the contract clearly states, that Indiana law is the appropriate state law for this Court to apply.  In Indiana the interpretation and construction of contract provisions is a function for the courts.  Klitz v. Klitz, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999). In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the document.  Noble Roman's, Inc. v. Pizza

4

Boxes, Inc., 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005). Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. Id. Whether a contract is ambiguous is a question of law. W. Ohio Pizza, Inc. v. Clark Oil & Refining Corp. 704 N.E.2d 1086, 1091 (Ind. Ct. App. 1999). Where the terms of a contract are clear and unambiguous, they are conclusive and a court will not construe the contract or consider extrinsic evidence. Eckart v. Davis, 631 N.E.2d 494, 497 (Ind. Ct. App. 1st Dist. 1994). A contract is not ambiguous merely because the parties disagree about the proper interpretation of its terms. Arrotin Plastic Materials of Ind. v. Wilmington Paper Corp., 865 N.E.2d 1039, 1041 (Ind. Ct. App. 2007). In fact, a contract is only ambiguous where a reasonable person could find that its terms are susceptible to more than one interpretation.[1] Id. If a contract is uncertain and its meaning is to be determined by extrinsic evidence, its construction is for the finder of fact. Schoemer v. Hanes & Assoc.s, Inc., 693 N.E.2d 1333, 1338-39 (Ind. Ct. App. 1998).

  1. <u>The contract is not ambiguous</u>

 MBS argues that the language of the agreement is unambiguous and clearly states that Fall Creek was to refer MBS as the middle man for the sale of any homes for core city fill in projects in Indiana, Ohio, and Michigan. MBS relies on paragraph four of the distribution agreement, which states:

> MBS and [Fall Creek] understand that [Fall Creek] retains the right to continue to prospect and sell to dealers, community owners, builders, investors, and government agencies not actively pursued by MBS, provided that [Fall Creek] agrees to refer

---

[1] The Indiana Supreme Court recently abolished the importance of the distinction between patent and latent ambiguities. See Univ. of S. Indiana Found. v. Baker, 843 N.E.2d 528, 535 (Ind. 2006). Although the Indiana Supreme Court was dealing with interpreting a trust in Baker, the Indiana Supreme Court stated, ". . . the latent/patent distinction has not been consistently applied and no longer serves any useful purpose. Accordingly, we conclude that where an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity." Id.

land development and core city in fill projects to MBS (Doc. No. 36-4, Distribution Agreement).

When Fall Creek used Ludington with regards to the Highland Park project, MBS argues that action was a breach. MBS argues that Fall Creek should have referred the project to MBS because it was a core city in fill project.[2]

In response, Fall Creek argues that paragraph three of the distribution agreement allowed Fall Creek to sell to Ludington. Paragraph three provides:

> MBS acknowledges that [Fall Creek] has an existing customer base in Indiana, Michigan, and Ohio. MBS agrees not to sell in areas where Fall Creek has (dealers, retail, sale lots, manufactured home communities, or builders). It is further understood that [Fall Creek] has the right to continue selling to its existing dealer network (Id.).

Fall Creek argues that it did not violate the distribution agreement when it sold homes to Ludington instead of referring those sales to MBS because Ludington was part of Fall Creek's existing dealer network.

Both paragraphs are unambiguous. Under paragraph four Fall Creek was to refer development projects to MBS. Paragraph three provides that Fall Creek can continue selling development projects to its existing customers. At first blush, it appears that paragraphs three and four of the contract are in direct conflict. However, closer examination reveals that they are not. This Court cannot simply read parts of paragraphs three and four, but it must consider the whole contract to determine the parties' intent. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). "In construing a contract, we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting

---

[2] The contract does not define what constitutes a "core city in fill project." However, the parties do not dispute that the Highland Park project was a "core city in fill project."

6

provisions to give effect to all provisions." George S. May Intern. Co. v. King, 629 N.E.2d 257, 261 (Ind. Ct. App. 1st Dist. 1994). This Court must accept an interpretation of a contract that harmonizes all the various parts so no provision is repugnant to, conflicting with, or neutralizing of another provision. Salcedo v. Toepp, 696 N.E.2d 426, 435 (Ind. Ct. App. 1998).

MBS argues that the most specific language is the reference to "core city fill in projects" in paragraph four. Because paragraph four referenced specific projects, MBS argues that this specific language is controlling over more general language. See George S. May Intern. Co., 629 N.E. at 261. However, specific language is controlling over more general language only when they both cover the same subject. Id. While both paragraphs three and four deal with the same general subject of "sales," they actually cover different specific aspects of sales.

Paragraph four is titled "Competition" and states that Fall Creek has the right to "continue to prospect and sell." The use of the word "prospect" clearly delineates that paragraph four is meant to control those situations in which Fall Creek is prospecting, or in other words, seeking new customers. Therefore, it follows the demand clause later in the paragraph that Fall Creek refer any core city projects to MBS clearly relates to any "prospective" sales rather than simply "any" sales.

Paragraph three, on the other hand, is titled "Existing Customers," and it mentions nothing about future or prospective customers. It only uses the language "existing" and mentions the right to "continue selling." In fact, there is no language in paragraph three that contemplates a look to the future or to possibilities.

Considering the contract as a whole, the intent of the parties is clear. Paragraph four only covered the subject of sales to future, unknown Fall Creek customers while paragraph three

7

covered the subject of sales to existing customers.  Under paragraph four, Fall Creek only had to refer projects with prospective sales.  Even though the more specific language referring to "core city fill in projects" is in paragraph four, it covers a completely different subject than paragraph three.  Under paragraph three, sales to Fall Creek's existing customers did not require a referral. Paragraphs three and four are in harmony with each other, and they are not repugnant to each other, conflicting, or neutralizing based on the distinction between customers.  Essentially, paragraph three is an exception to paragraph four.   Fall Creek did not breach the contract by failing to refer the Highland project to MBS.

MBS argues that even if paragraph three provides an exception to paragraph four, the specific language of paragraph four is an exception to the exception.  Specifically, MBS argues that because the specific language in paragraph four referenced "core city in fill projects," Fall Creek had to refer all "core city in fill projects" regardless of its right to sell in its existing network as provided in paragraph three.   Simply put, construing the contract in this manner is a strained reading.   If the parties had stated that "all" core city in fill projects would be referred or that they "must" be referred, then MBS's argument would carry some weight.  But the parties did not use such language.  Therefore, this Court cannot isolate the language of  "core city in fill projects " from the rest of paragraph four simply to give it more specific meaning or to create an ambiguity.  To do so would run afoul of this Court's duty to review the contract as whole, and it is also unnecessary given the clear and unambiguous language of the contract.

       2.    <u>Ludington was either a dealer or customer</u>

Next, MBS argues that paragraph three was not even applicable because Ludington was not a "dealer" within Fall Creek's "existing dealership network."  Fall Creek argues in response

8

that it does not matter whether Ludington was a dealer.  Fall Creek argues that Ludington, at the very least, was a customer, and paragraph three allowed Fall Creek to continue selling to its existing customers.  Fall Creek also argues that Ludington was a "dealer."

First, this Court agrees with Fall Creek that it does not matter whether Ludington was a "dealer."  Paragraph three is titled "Existing Customers," and the paragraph states, "MBS acknowledges that [Fall Creek] has an existing customer base."  The paragraph later provides that Fall Creek has a right to sell to its "existing dealer network."  The repeated references to "existing customers" establishes that "existing customers" are part of Fall Creek's "existing dealer network." MBS does not dispute that Ludington was a "customer" of Fall Creek.  Consequently, the clear and unambiguous language of the contract establishes that Fall Creek had a right to sell to its "existing customer," Ludington, which entitles Fall Creek to judgment as a matter of law.

Even if the "existing dealer network" did not include Fall Creek's "existing customer base," Ludington was still an existing "dealer."   The contract is silent as to the definition of what constitutes a "dealer."  However, that does not mean the word "dealer" is ambiguous.  The plain, ordinary definition of a "dealer" is ". . . one who buys to sell."  Black's Law Dictionary 399 (6th ed.1990).  The parties do not dispute that Ludington bought homes from Fall Creek in the past for the purpose of selling them.  Consequently, Ludington is a "dealer" for purposes of the contract.

MBS argues that Ludington was merely an employee of a dealership, and therefore, she could not be considered a "dealer."  Essentially, MBS is attempting to establish that the word "dealer" is ambiguous by arguing that there is some kind of industry definition for the term

9

"dealer" that means something more than an "employee." The only evidence MBS submits in support of this argument is the December 15, 2004, agreement between Ludington and Fall Creek. However, this agreement is nothing more than a memorialization of a deal between Ludington and Fall Creek. The agreement does not establish what the industry considers to be a "dealer," nor does it provide any evidence that the industry has a special definition for a "dealer." Simply put, the agreement does not create a genuine issue of fact that the word "dealer" is ambiguous.

MBS fails to offer any evidence besides the agreement to establish that Ludington was not considered a "dealer." To survive summary judgment, MBS must present something to establish that there is a genuine issue of material fact. MBS vehemently tries to distinguish Ludington as an "employee" who worked for a "dealer." However, MBS must present some sort of evidence to establish that this distinction matters. MBS may subjectively believe a "dealer" is something more than an "employee," but a subjective belief is not sufficient to survive summary judgment. See Avery v. Mapco Gas Products, Inc., 18 F.3d 448, 453-54 (7th Cir. 1994). The plain meaning of a "dealer," which is one who buys to sell, encompasses both an "employee" and the company for which the employee works. A word is not ambiguous merely because MBS disagrees about its proper interpretation. See Arrotin Plastic Materials of Ind., 865 N.E.2d at 1041. MBS has failed to present evidence to prove otherwise. Simply put, because MBS has failed to establish a genuine issue of material fact as to whether contract is clear on its face, Fall Creek is entitled to judgment as a matter of law.

In summary, Ludington is both a "customer" and a "dealer." The parties do not dispute that Ludington was a customer, and she fits within the plain meaning of the word "dealer." MBS

10

has failed to establish a genuine issue of material fact that ambiguity exists in the contract, as a result, Fall Creek is entitled to judgment as a matter of law.

### III.  CONCLUSION

For the reasons stated, this Court recommends that MBS's motion for summary judgment should be **DENIED** [Doc. No. 36 & 55] and that Fall Creek's motion for summary judgment be **GRANTED** [Doc. No. 67].

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED.**

Dated this 28th Day of September, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge