UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MODULAR BUILDING ) | |
| SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 1:05-CV-141 RM |
| ) | |
| THE FALL CREEK HOME, LLC, ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

The court assumes the parties' familiarity with the procedural history of this case prior to September 5, 2007, when Magistrate Judge Christopher A. Nuechterlein conducted a hearing on the summary judgment motion of Modular Building Solutions, LLC. Following that hearing, and at Magistrate Judge Nuechterlein's direction, The Fall Creek Home, LLC filed a summary judgment motion (on September 14), and Modular filed its response to that motion (on September 25). Magistrate Judge Nuechterlein issued his Report and Recommendation on September 28, recommending that Fall Creek's summary judgment motion be granted and Modular's summary judgment motion be denied. Modular's objections to the R&R and Fall Creek's response to the objections currently pend for this court's consideration.

Federal Rule of Civil Procedure 72(b) requires that once a timely objection to a magistrate judge's report and recommendation has been filed, the district

court must make a de novo determination as to any portion of the report to which an objection is made. The court may then accept, reject, or modify the recommended decision. FED. R. CIV. P. 72(b). For the reasons that follow, the court accepts the Magistrate Judge's recommendations relating to disposition of the pending summary judgment motions.

A brief review of the facts is as follows: Fall Creek and Modular officials entered into a Distribution Agreement on November 25, 2003, granting Modular the right to sell and distribute Fall Creek products to builders, developers, investors, and government agencies in Indiana, Michigan, and Ohio. [Agreement, ¶ 1.] Under the Agreement's terms, Modular would purchase building products from Fall Creek and sell those products to developers or builders who were building homes incorporating Fall Creek products. [Amd. Compl., ¶ 3.] Modular asserts Fall Creek breached the Agreement when it engaged in a direct sale of products to a core city in fill project in Highland Park, Michigan. Modular claims that paragraph 4 of the Agreement mandates that Fall Creek refer all core city in fill projects to Modular.

Fall Creek maintains it didn't breach the Agreement because, pursuant to paragraph 3 of the Agreement, Fall Creek retained the right to continue selling products to its existing dealer network. Fall Creek insists that Sylvia Ludington, the Highland Park project developer, was a customer, dealer, and/or agent of Fall Creek before the Agreement's effective date, thereby exempting the Highland Park project from the terms of the Agreement.

The relevant portions of the Distribution Agreement read as follows:

3.  <u>Existing Customers</u>. [Modular] acknowledges that [Fall Creek] has an existing customer base in Indiana, Michigan and Ohio. [Modular] agrees not to sell in areas where Fall Creek has (dealers, retail, sale lots, manufactured home communities, or builders). It is further understood that [Fall Creek] has the right to continue selling to its existing dealer network.

4.  <u>Competition</u>, [Modular] and [Fall Creek] understand that [Fall Creek] retains the right to continue to prospect and sell to dealers, community owners, builders, investors, and government agencies not actively pursued by [Modular], provided that [Fall Creek] agrees to refer land development and core city in fill projects to [Modular].

*Language of Paragraphs 3 and 4*

Magistrate Judge Nuechterlein heard the parties' arguments relating to their differing interpretations of paragraphs 3 and 4 of the Agreement and concluded:

> Considering the contract as a whole, the intent of the parties is clear. Paragraph four only covered the subject of sales to future, unknown Fall Creek customers while paragraph three covered the subject of sales to existing customers. Under paragraph four, Fall Creek only had to refer projects with prospective sales. Even though the more specific language referring to 'core city fill in projects' is in paragraph four, it covers a completely different subject than paragraph three. Under paragraph three, sales to Fall Creek's existing customers did not require a referral. Paragraphs three and four are in harmony with each other, and they are not repugnant to each other, conflicting, or neutralizing based on the distinction between customers. Essentially, paragraph three is an exception to paragraph four. Fall Creek did not breach the contract by failing to refer the Highland [Park] project to [Modular].

R&R, pp. 7-8.

Modular says the Magistrate Judge erred in attempting to distinguish between paragraphs 3 and 4. Paragraphs 3 and 4, Modular argues, address the

3

same subject matter, specifically, the protections given to Modular and the types of sales that are off limits for Fall Creek. Modular asserts that the language in paragraph 4 stating that Fall Creek "agrees to refer land development and core city in fill projects to [Modular]" should take precedence over any other language in the Agreement. The court can't agree.

Indiana law, which governs the Agreement,[1] requires contract interpretation to involve consideration of the contract as a whole, "without giving special emphasis to any word, phrase or paragraph." Hepburn v. Tri-County Bank, 842 N.E.2d 378, 384 (Ind. Ct. App. 2006). The court must "presume that all provisions included in a contract are there for a purpose" and "make every effort to avoid a construction of contractual language that renders any words, phrases, or terms ineffective or meaningless." Indiana Gaming Co., L.P. v. Blevins, 724 N.E.2d 274, 278 (Ind. Ct. App. 2000). Neither party has argued that the language of the Agreement is ambiguous; thus, the Agreement's unambiguous language "is conclusive upon the parties to the contract and upon the court[]." Trustcorp Mortgage Co. v. Metro Mortgage Co., 867 N.E.2d 203, 212 (Ind. Ct. App. 2007).

Paragraph 3 of the Agreement relates to "Existing Customers" of Fall Creek: Fall Creek retained the right to sell products to its existing dealer network, and Modular recognized Fall Creek's existing customer base in Indiana, Michigan, and Ohio and agreed to not sell in areas where Fall Creek has "dealers, retail, sale lots,

---

[1] Paragraph (d) provides that, "This Agreement shall be governed by and interpreted under the laws of the State of Indiana."

4

manufactured home communities, or builders." Paragraph 4 addresses "Competition" between the parties: Fall Creek retained the right to sell products to "dealers, community owners, builders, investors, and government agencies" not actively pursued by Modular and agreed to refer land development and core city in fill projects to Modular. Reference to Fall Creek's duty to refer "land development and core city in fill projects" is contained in paragraph 4's discussion of new customers of the parties; no such referral duty is included in paragraph 3's discussion of Fall Creek's right to continue doing business within its existing customer/dealer network.

Contrary to Modular's reading of the Agreement, nothing in the Agreement requires Fall Creek to refer "all" land development and core city in fill projects to Modular. *See* Evan v. Poe & Assocs., Inc., 873 N.E.2d 92, 98 (Ind. Ct. App. 2007) (court can't "add provisions not agreed upon by the parties"); Trustcorp Mortgage v. Metro Mortgage, 867 N.E.2d at 213 ("After reviewing the contract language of the [Agreement], it appears to us that the best interpretation of the phrase 'qualify for' does not include the insertion of the term 'resale' as Trustcorp would have us do. In interpreting a contract, we give the language of the contract its plain and ordinary meaning."). Requiring Fall Creek to refer "all" such projects to Modular would effectively negate the portion of paragraph 3 that affords Fall Creek the right to sell products to its existing dealer network. *See* Trustcorp Mortgage v. Metro Mortgage, 867 N.E.2d at 214 ("To interpret the language of the contract to require Metro to produce flawless documents in all circumstances . . . would

5

render this section of the contract meaningless. This we cannot do."). Because the court must "accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict," Whitaker v. Brunner, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004), Modular's objection to the R&R relating to paragraphs 3 and 4 is overruled.

*Status of Sylvia Ludington*

Modular argues that the conclusion of the R&R that Sylvia Ludington was a customer and/or a dealer of Fall Creek was in error. Modular maintains Ms. Ludington wasn't a dealer in November 2003 (the Agreement's effective date) and so wasn't part of Fall Creek's "existing dealer network." Modular argues that "Ms. Ludington's status as an employee or representative of a dealer or customer does not constitute her as a dealer or customer within the meaning of the agreement." Obj., ¶ 1. According to Modular, Ms. Ludington's status as a dealer for Fall Creek didn't occur until December 2004 when she began development of the Highland Park project. Modular maintains that because the Highland Park project was a core city in fill project, paragraph 4 obligated Fall Creek to refer the Highland Park project to Modular.

Modular relies on the deposition statement of James DeFreese, Fall Creek's sales manager, that Ms. Ludington

> has worked within the industry since '91 roughly. She sold a number of homes for us through dealerships, through spec housing. So in my

>  opinion she's probably the most complete retail salesperson that I've ever dealt with as far as knowing what she's doing and her abilities.

DeFreese Dep., at 21. Modular claims Mr. DeFreese's statement confirms that Ms. Ludington wasn't a customer or dealer of Fall Creek.

Fall Creek responds that Sylvia Ludington is, as the Magistrate Judge correctly concluded, within the class of individuals who make up Fall Creek's "existing dealer network." Fall Creek says Ms. Ludington's deposition testimony and affidavit statements establish that she and Fall Creek had a long-term relationship that pre-dated the Highland Park project. Fall Creek says, too, that Mr. DeFreese's deposition testimony establishes that Fall Creek recognized Ms. Ludington as a long-time customer and dealer who, over the years, sold many Fall Creek homes.

Ms. Ludington states in her affidavit (submitted as Exhibit 4 to Fall Creek's summary judgment response) that she "sold homes as a dealer for Fall Creek Homes beginning as early as 1999" and, from 1999 through 2003, "worked in the capacity as a dealer for [Fall Creek], working directly with James DeFreese of [Fall Creek], selling four to five homes for [Fall Creek]." Ludington Aff., ¶¶ 1-2. Ms. Ludington was questioned by Modular's counsel about her prior work:

> Q    Let me ask you another question. I understand that you had sold homes before [the Highland Park project] for Fall Creek?
> A    Yes.
> Q    Were they modular home units or some other kind of –
> A    Both, I sold both actually.

7

Ludington Dep., at 12. Ms. Ludington also answered questions from Fall Creek's attorney about her prior work experience:

> Q   Mrs. Ludington, you were in the business of acting as a dealer for modular and manufactured homes for sometime before this Highland Park project, is that a fair statement?
> A   Yes.
> Q   Approximately how long have you been in this business?
> A   14 years.

Ludington Dep., at 18. James DeFreese testified that Ms. Ludington was "a long-time customer" of Fall Creek, who had "done business with Fall Creek." DeFreese Dep., at 10, 21. When asked whether Ms. Ludington was a dealer, Mr. DeFreese answered, "Yeah, she worked – she worked through dealerships." DeFreese Dep., 22.

Modular offers no support for its conclusory proposition that, "If an employee or representative of an existing dealer or customer as of November 25, 2003 (the date of the agreement) was considered to be a dealer or customer, then he or she could sell directly the defendant's products after terminating with that dealer or customer without having an actual dealership being awarded to him or her and claim dealership status based upon his or her previous relationship as an employee or representative of a dealer." Obj., ¶ 5. Ms. Ludington testified that she worked as a dealer selling Fall Creek homes before the Highland Park project; Mr. DeFreese testified that Fall Creek considered Ms. Ludington to be a customer and/or dealer of Fall Creek products prior to the Highland Park project. Modular has offered no evidence to the contrary. *See* Albiero v. City of Kankakee, 246 F.3d

8

927, 933 (7th Cir. 2001) ("We require that the party opposing the motion take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact."). Modular's objection to Magistrate Judge Nuechterlein's conclusion that use of the phrase "dealership network" in paragraph 3 includes Sylvia Ludington, *see* R&R, at 10 ("In summary, [Ms.] Ludington is both a 'customer' and a 'dealer.'"), is overruled.

*Conclusion*

A review of the record of this cause, including the parties' motions, the transcript of the September 5, 2007 summary judgment hearing, the September 28 Report and Recommendation, and the objections to the R&R, convinces the court that Magistrate Judge Nuechterlein's recommendations [docket # 73] should be, and hereby are, ADOPTED. Accordingly,

(a) the summary judgment motion and supplemental memorandum of Modular Building Solutions, LLC [docket # 36 and # 55] is DENIED; and

(b) the summary judgment motion of The Fall Creek Home, LLC [docket # 67] is GRANTED.

The clerk is directed to enter judgment for the defendant and against the plaintiff on all claims of the first amended complaint.

SO ORDERED.

ENTERED:   March 6, 2008

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court